**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DONNA ROJAS**, *et al.*, | * | |
| **Plaintiffs,** | * | |
| v. | * | **Case No.: DLB-21-28** |
| **HUNTINGTON NEIGHBORHOOD** | * | |
| **ASSOCIATION**, *et al.*, | * | |
| **Defendants.** | * | |
| | * | |

**MEMORANDUM OPINION**

Since 2017, homeowners who signed confessed judgment promissory notes to avoid collection actions for unpaid homeowner association dues have challenged the legality of the notes. This purported class action was brought on behalf of several homeowners against their homeowner associations ("HOAs") and counsel for the HOAs who drafted and benefited from the promissory notes—Andrews & Lawrence Professional Services, Torin Andrews, and Kary Lawrence (together, "A&L"). The plaintiffs have settled their claims against every HOA except Huntington Neighborhood Association, Inc. ("Huntington"). Huntington, A&L, and Maredith Management, LLC ("Maredith"), a management company working with A&L and Huntington, are the only remaining defendants.

In a bold move, A&L, who represent themselves in this action, filed a third-party complaint against plaintiffs' counsel of record, Richard Gordon, Gordon, Wolf & Carney, Chtd., Alexa E. Bertinelli, and Civil Justice, Inc. (together, "plaintiffs' counsel" or "third-party defendants"). ECF 36. A&L alleges plaintiffs' counsel—by virtue of their alleged solicitation and representation of the homeowners—committed civil conspiracy and intentional interference with contract. Plaintiffs' counsel moved for judgment on the pleadings as to the third-party complaint and

sanctions against the A&L defendants for filing it.  ECF 66, 67.  The parties fully briefed the motions.  ECF 66-1, 67-1, 70–73.  A hearing is not necessary.  *See* Loc. R. 105.6.  For the following reasons, A&L fails to state a claim, their claims are not warranted under existing law, and the baseless third-party complaint serves only to cause unnecessary delay and to increase the cost of litigation unnecessarily.  Accordingly, the motion to dismiss and motion for sanctions are granted.

## I.     Background

An overview of the lengthy history of this case provides context for the pending motions.  On October 24, 2017, plaintiffs' counsel filed a class action lawsuit in state court on behalf of homeowners against A&L and another law firm.  The plaintiffs in that case claimed A&L violated Maryland statutory and common law and the Federal Fair Debt Collection Practices Act ("FDCPA") by using promissory notes with confessed judgment clauses to collect unpaid dues from homeowners on behalf of homeowner associations.  A&L removed the case to this Court, where the claims against them were severed from the claims against the other firm and claims against HOAs were introduced.  *Cisneros v. Andrews & Lawrence Prof'l Servs.*, No. PWG-18-3236 (D. Md.) (claims against A&L and HOAs); *see also Osinaga v. Whiteford, Taylor & Preston, L.L.P.*, No. PWG-17-3750 (D. Md.) (claims against other firm).

On May 31, 2019, plaintiffs' counsel initiated this litigation ("*Rojas*") on behalf of other homeowners, some of whom were putative class members in *Cisneros*, by filing a class action lawsuit in state court against other HOAs for which A&L drafted promissory notes.  Plaintiffs allege that A&L, as the HOAs' agent, required homeowners to sign the notes and then used the notes to collect alleged debt.  At the time plaintiffs filed *Rojas*, the claims against A&L were pending in *Cisneros*, and plaintiffs did not name them as defendants in *Rojas*.  But, when one of the HOAs brought a third-party complaint against A&L, plaintiffs had to assert all claims arising

out of the transaction.  Therefore, on July 15, 2020, plaintiffs filed a second amended complaint in *Rojas* that included the claims against A&L that were pending in *Cisneros*.  The *Cisneros* representative plaintiffs joined this action.  One of the HOAs then filed a motion to dismiss the *Rojas* complaint, arguing that it was identical to *Cisneros*.  Although plaintiffs did not agree that the parallel litigation required dismissal of either suit, they nevertheless voluntarily dismissed *Cisneros* to moot the motion to dismiss in *Rojas*.

On August 18, 2020, A&L filed a motion to dismiss the second amended complaint in *Rojas*, which the state court granted in part and denied in part.  ECF 60-2.  Meanwhile, plaintiffs settled with all HOAs except Huntington.  In late 2020, plaintiffs amended their pleading twice to add two FDCPA claims and to omit the dismissed claims and the class claims that the state court severed, among other changes.

On January 5, 2021, the defendants removed the fourth amended complaint in *Rojas*, which was no longer a class action, to this Court.  ECF 1.  On February 3, 2021, plaintiffs filed a fifth amended complaint that reintroduced the class claims.  ECF 13.  The fifth amended complaint includes claims for fraud and violations of the FDCPA, the Maryland Consumer Protection Act, the Maryland Consumer Debt Collection Act, and the Maryland Consumer Loan Law.  The plaintiffs are Donna Rojas, Maria Santizo, Jason Tonkins, Milly Terry, Eugene Thompson, Lolia Samuel-Hosfall, Cumanda Cisneros, Lisa Moore, Tyler Zion, and Luis Santizo.  Defendants are Huntington, Maredith, and A&L.  Maredith is the management company that manages Huntington; it acts as a debt collector and retained A&L as its agent.

On February 22, 2021, A&L filed an answer to the fifth amended complaint, a counterclaim, and a third-party complaint against plaintiffs' counsel.  ECF 17; *see* ECF 36 (third-party complaint docketed separately from answer and counterclaim).  The third-party complaint

alleges that plaintiffs' counsel committed civil conspiracy to unlawfully solicit clients (Count I) and intentional interference with contract (Count II).

In support of the civil conspiracy claim, A&L alleges plaintiffs' counsel "agreed to engage, engaged, and intended to engage, in concert, in a practice of soliciting residents of Charles County and other counties to sue Third-Party Defendants A&L" for "their own personal financial gain." ECF 36, ¶¶ 1, 2. They further allege plaintiffs' counsel "violated § 10-604 of the Business and Occupation Article of the Annotated Code of Maryland." *Id.* ¶ 3. They allege that before the solicitations, "the Solicitees were not inclined to sue A&L, had a good relationship with A&L, and but for the solicitous conduct of the Third-Party Defendants would not have instituted litigation against A&L." *Id.* ¶ 5. They further allege that the "Solicitees were enticed to sue A&L only because the Third-Party Defendants wanted to generate revenues . . . for their own personal gain, aggrandizement, and other self-interests." *Id.* ¶ 6. According to A&L, the "Solicitees have been used as pawns in the Third-Party Defendants' scheme to stir up litigation to benefit the Third-Party Defendants." *Id.* Finally, A&L alleges that the promissory notes and payment plan agreements offered to the solicited homeowners reduced the homeowners' debt, forbore collection actions, and extended the payment period, all of which conferred "a substantial benefit" on the homeowners. *Id.* ¶ 7.

In support of the intentional interference of contract claim, A&L alleges they are third-party beneficiaries under the promissory notes and payment plan agreements. ECF 36, ¶ 9. They further allege that plaintiffs' counsel "through intimidation and coercion, forced the Payees under the notes and agreements to attempt to rescind the notes and agreements in order to cancel the valuable third-party beneficiary rights of A&L." *Id.* ¶ 10. They allege plaintiffs' counsel "acted with malice." *Id.* ¶ 11.

On April 21, 2021, plaintiffs' counsel filed a motion for judgment on the pleadings as to the third-party complaint.  ECF 66.  They also filed a motion for Rule 11 sanctions against the A&L defendants for filing the third-party complaint.  ECF 67.

## II.     Rule 12(c) Standard of Review

After the pleadings are closed but early enough not to delay trial, "a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  When a party contends in a Rule 12(c) motion that the pleading, even if taken as true, fails to state a claim for which relief can be granted, the motion is "assessed under the same standard that applies to a Rule 12(b)(6) motion." *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

A Rule 12(b)(6) motion to dismiss for failure to state a claim "tests the legal sufficiency of a complaint" and "should be granted unless the complaint 'states a plausible claim for relief.'" *In re Birmingham*, 846 F.3d 88, 92 (4th Cir.), *as amended* (Jan. 20, 2017) (quoting *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)); *see* Fed. R. Civ. P. 12(b)(6).  To survive the motion, the "complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).  Stated differently, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2)). In ruling on a Rule 12(c) motion, as with a Rule 12(b)(6) motion, the Court must accept as true all of the plaintiffs' allegations and must construe factual allegations in the light most favorable to the plaintiffs.  *See Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021); *Pulte Home Corp. v. Montgomery Cnty., Md.*, 909 F.3d 685, 691 (4th Cir. 2018).

III.    **Motion for Judgment on the Third-Party Complaint**

A.  **Intentional Interference with Contract**

The elements of intentional interference with contract are:

(1) intentional and wilful [sic] acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

*Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010) (quoting *Kaser v. Fin. Protection Mkt'g, Inc.*, 831 A.2d 49, 53 (Md. 2003)).[1]

A&L has not plausibly alleged a claim for intentional interference with contract. They generally assert that plaintiffs' counsel, "through intimidation and coercion, forced" homeowners to attempt to rescind the promissory notes and payment plan agreements "in order to cancel the valuable third-party beneficiary rights of A&L." ECF 36, ¶¶ 9–10. This conclusory statement is unsupported by any specific factual allegations about how plaintiffs' counsel allegedly intimidated, coerced, or forced homeowners to rescind the notes and agreements. The same is true for the conclusory statement that plaintiffs' counsel "acted with malice." *Id.* ¶ 11. There are no alleged facts from which the Court could plausibly infer that plaintiffs' counsel acted with malice. *See Krueger v. Angelos*, 26 F.4th 212 n.1, 2022 WL 453980, at *1 n.1 (4th Cir. 2022) (court does "not accept as true unwarranted inferences, unreasonable conclusions or arguments" (quoting *Carey v. Throwe*, 957 F.3d 468, 474 (4th Cir. 2020))).

The third-party complaint is devoid of any allegations supporting an inference that—when plaintiffs' counsel allegedly solicited homeowners and filed suit on their behalf challenging the legality of the promissory notes—they had an unlawful purpose, they acted without justification, or their actions were calculated to cause A&L damages in their lawful business. In fact, the

---

[1] The parties agree Maryland law applies. ECF 66-1, at 5, 7; ECF 70, at 5, 7.

plaintiffs' claims have found traction in state court.  As A&L notes, "in 2020, the Maryland Court of Appeals, upon review of the 2016 Cisneros note in *Goshen Run Homeowners Ass'n v. Cisneros*, 467 Md. 74, 223 A.3d 917 (2020), made it clear that the Maryland Consumer Protection Act precluded enforcement of a confessed judgment clause in a promissory note of the types executed by the Plaintiffs in the case at bar."  ECF 60-1, at 11–12.  This ruling—which came down more than a year before the third-party complaint was filed—shows plaintiffs were justified in challenging the promissory notes.

In their opposition, A&L suggests that the interference with contract occurred after the *Goshen Run* decision, during the post-decision settlement negotiations with the HOAs.  A&L claims plaintiffs' counsel's interfered with their third-party beneficiary rights under the promissory notes by insisting that the settlement agreements with the HOAs void the notes.  ECF 70, at 8.  These allegations are not in the third-party complaint, and A&L cannot amend their pleading through an opposition to the motion for judgment on the pleadings.  *See Bindagraphics, Inc. v. Fox Grp., Inc.*, 377 F. Supp. 3d 565, 577 (D. Md. 2019).  Even if A&L had alleged these facts in the third-party complaint, they would fail to state a claim for intentional interference with contract.  A&L does not identify any facts from which the Court could plausibly infer that plaintiffs' counsel acted with an unlawful purpose when they negotiated settlement agreements with HOAs that voided promissory notes containing an illegal confessed judgment clause.

The third-party complaint falls woefully short of alleging a viable claim for intentional interference with contract.  Plaintiffs' counsel's motion for judgment as to this claim is granted.

### B.  Civil Conspiracy

Civil conspiracy is "the 'combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in

itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff.'"  *Marshall v. James B. Nutter & Co.*, 758 F.3d 537, 541 (4th Cir. 2014) (quoting *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005)).  To state a claim for civil conspiracy, the plaintiff must allege other tortious conduct.  *See Arkansas Nursing Home Acquisition, LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 647 (D. Md. 2020) ("Under Maryland law, there is no separate tort for civil conspiracy; instead, a civil conspiracy theory merely serves to extend liability to the co-conspirators after some other tortious conduct is established."); *see also Marshall*, 758 F.3d at 541 (holding a plaintiff cannot prevail on a claim for civil conspiracy under Maryland law "in the absence of other tortious injury to the plaintiff" (quoting *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1045 (Md. 1995))).  Stated differently, "[n]o action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort." *Alleco*, 665 A.2d at 1045 (quoting *Domchick v. Greenbelt Consumer Servs., Inc.*, 87 A.2d 831, 834 (Md. 1952)).

The alleged tortious conduct here is a violation of Maryland's barratry statute, Md. Code Ann., Bus. Occ. & Prof. § 10-604.  The barratry statute provides, in relevant part, that, "[w]ithout an existing relationship or interest in an issue . . . a lawyer, except as provided in the Rules of Professional Conduct, may not . . . for personal gain, solicit another person to sue or to retain the lawyer to represent the person in a lawsuit . . . ." *Id.* § 10-604(b)(3)(i).  Any person who violates the barratry statute "is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $1,000 or imprisonment not exceeding 1 year or both." *Id.* § 10-606.

Plaintiffs' counsel argue that barratry cannot be the predicate tortious conduct for a civil conspiracy claim because barratry is a crime, not a tort, and the barratry statute does not give rise to a private cause of action in tort.  The Court agrees.  In *Metropolitan Regional Information*

*Systems, Inc. v. American Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 568–69 (D. Md. 2013), this Court squarely addressed this issue.  It held that the barratry statute "expressly provides for the criminal prosecution of violators, but does not declare a private cause of action."  *Id.* (citing *Son v. Margolius, Mallios, Davis, Rider & Tomar*, 689 A.2d 645, 653 n.11 (Md. Ct. Spec. App. 1997), *rev'd on other grounds*, 709 A.2d 112 (Md. 1998)); *see also Son v. Margolius, Mallios, Davis, Rider & Tomar*, 709 A.2d 112, 119 (Md. 1998) (the barratry statute "is a criminal statute.").

The A&L defendants rely on *Fangman v. Genuine Title, LLC*, 136 A.3d 772 (Md. 2016), to argue there is an implied private cause of action for barratry, but the Maryland Court of Appeals has declined to reach that conclusion, and this Court has held that there is no private cause of action.  *Metro. Reg'l Info. Sys.*, 948 F. Supp. 2d at 568–69 ("[T]he Court is not aware of any [cases] holding that Maryland's criminal barratry statute creates a private cause of action in tort.  In fact, most courts that have examined that issue in other jurisdictions have concluded that a private cause of action for barratry cannot be implied from a criminal statute.  The Court finds no basis to conclude that the Maryland criminal barratry statute creates a private right of action." (citations omitted)); *Son*, 689 A.2d at 653 & n.11 (stating the court "need not address . . . the existence of a private cause of action for violation of the statute prohibiting barratry" but noting that "[t]he Act does expressly provide for criminal prosecution of violators. It does not similarly declare a private cause of action" and that the court "[i]n numerous cases [has] refused to find an implied private cause of action stemming from various regulatory statutes").  While it is true that *Metropolitan Regional Information Systems* preceded *Fangman* by three years, the *Fangman* Court applied a test that the Supreme Court established decades earlier "for determining whether a statute contains implicitly a private cause of action."  *Fangman*, 136 A.3d at 779 (quoting *Cort v. Ash*, 422 U.S. 66, 78 (1975)).  Therefore, the test was available to this Court when it decided *Metropolitan*

*Regional Information Systems*. And, the Maryland Court of Appeals discussed the test in 2012, the year before *Metropolitan Regional Information Systems*. *Baker v. Montgomery Cnty.*, 50 A.3d 1112, 1122–23 (Md. 2012). The *Cort* test asks

> First, is the plaintiff one of the class for whose especial benefit the statute was enacted[?] Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

*Fangman*, 136 A.3d at 779 (quoting *Cort*, 422 U.S. at 78). A&L avers, without offering any support from legislative history, that the Maryland legislature sought to protect law firms like A&L from alleged "modern-day ambulance chasers" like plaintiffs' counsel. ECF 70, at 7. Nor has A&L cited any legislative history that demonstrates legislative intent to provide for a private cause of action for parties such as A&L. Finally, A&L unconvincingly argues, without any analysis, that a private cause of action for barratry is consistent with the underlying purpose of the law criminalizing barratrous conduct. The Court finds the reasoning in *Metropolitan Regional* is sound and unchanged by *Fangman* and follows it here. Because barratry is not a tort, a civil conspiracy claim based on a violation of the barratry statute cannot stand.

Even if a violation of the barratry statute could give rise to a civil conspiracy claim, A&L fails to allege barratry. "The thrust of the offense [of barratry] is stirring up, meddling in, or maintaining litigation in which the person has no interest, for personal gain. The officious meddling and the personal gain are separate elements, and both must be satisfied." *Son v. Margolius, Mallios, Davis, Rider & Tomar*, 709 A.2d 112, 121 (Md. 1998); *see Metro. Reg'l Info. Sys.*, 948 F. Supp. 2d at 568–69 (noting "[t]he key elements to the statutory offense are 'officious meddling' and 'personal gain'" (quoting *Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 299 (4th Cir. 2002))). "[T]he concepts of 'officious meddling' and 'personal gain' reflect the modern policy . . . against enforcing 'schemes to promote litigation for the benefit of the promoter

rather than for the benefit of the litigant or the public.'" *Accrued*, 298 F.3d at 299 (quoting 7 *Williston on Contracts* § 15:4).

The third-party complaint contains no facts that plausibly allege barratry. A&L makes the blanket, unsupported assertion that plaintiffs' counsel solicited homeowners "for the purpose of their own personal financial gain." ECF 36, ¶ 2. They also allege that before the solicitations, the homeowners "were not inclined to sue A&L, had a good relationship with A&L, and but for the solicitous conduct . . . would not have instituted litigation against A&L." *Id.* ¶ 5. None of these allegations supports an inference that plaintiffs' counsel's contact with homeowners stirred up or meddled in litigation for counsel's personal gain.

In an attempt to save their deficient complaint, A&L attaches to its opposition letters that plaintiffs' counsel sent to homeowners who signed the promissory notes. ECF 70-1, 70-2; *see* ECF 71, at 1–2.ECF 70, at 1–2; ECF 71, at 1–2. A&L argues these letters are evidence of stirring up or meddling in litigation for personal gain. The letters, dated February 21 and March 13, 2019, state in full:

> I am writing to you concerning an investigation that Civil Justice, Inc. and the law firm Gordon, Wolf & Charney Chtd. are conducting into the illegal debt collection practices of Home Owners Associations (HOAs) in Maryland, including [ ] Community Association, Inc. Our review of the court records indicate that, within the past several years [ ] Community Association, Inc. had you sign a promissory note relating to fees that you allegedly owe to the HOA. That promissory note includes a provision known as a "Confessed Judgment Clause" that operates to waive your right to assert a legal defense to any action brought against you in court. Many courts in Maryland have already made the determination that the use of promissory notes, like the note [ ] Community Association, Inc. used against you, is an unfair, abusive and deceptive practice when it involves a debt owed by a consumer.

> The purpose of this investigation is to stop the illegal practice of using confessed judgment notes against consumers and to obtain recovery for consumers like you who fell victim to the improper practice.

> Civil Justice, Inc. is a Maryland non-profit organization formed for the purpose of increasing access to justice. We work on behalf of Maryland consumers

to protect their rights, but are only able to do so if we can find people willing to discuss how to fight back.  We would like to talk to you as soon as possible about your particular circumstances.  At your earliest convenience, please telephone me at **410-706-5650**, or e-mail me at abertinelli@civiljusticenetwork.org.

> We want to help eliminate this unlawful practice and look forward to hearing from you.

ECF 70-1, 70-2.

As a threshold matter, the third-party complaint does not reference or attach these letters, and the Court cannot consider them when deciding this motion for judgment on the pleadings.  *See Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (on a Rule 12(c) motion, the "court cannot consider matters outside the pleadings without converting the motion into one for summary judgment" unless the document is "'integral to the complaint and authentic'" or "a 'written instrument' attached as an exhibit to a pleading" (quoting *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009), and then Fed. R. Civ. P. 10(c)).  Even if the Court could consider the letters, they do not show that plaintiffs' counsel were stirring up or meddling in litigation.  The letters, which do not mention A&L, were sent in early 2019—well over a year after plaintiffs' counsel brought a class action lawsuit on behalf of their clients against A&L.  *See Cisneros*, No. PWG-18-3236; *Osinaga*, No. PWG-17-3750.  In the letters, plaintiffs' counsel sought information about the HOAs and their use of confessed judgment promissory notes to assist counsel in the existing class action litigation.  The letters are not evidence of "officious meddling" in litigation for personal gain.

Moving away from the unfounded barratry allegations, A&L argues that by sending the letters, plaintiffs' counsel violated Maryland Rule of Professional Responsibility 19-307.3(b)–(c).  That rule permits written solicitation of "professional employment from a prospective client" provided (1) there is no basis for the attorney to know that the client "could not exercise reasonable judgment in employing an attorney"; (2) the prospective client has not asked not to be solicited;

12

(3) the solicitation does not "involve[] coercion, duress, or harassment"; and (4) the communication "include[s] the words 'Advertising Material' on the outside envelope, if any." Md. Rule 19-307.3(b)–(c). Based on the information before the Court, it does not appear that plaintiff's counsel violated this rule. In any event, even if sending the letters somehow violated the Maryland Rules of Professional Responsibility, a rules violation is not tortious conduct that gives rise to a civil conspiracy claim. *See Blondell v. Littlepage*, 991 A.2d 80, 96 (Md. 2010) (noting the preamble to the Rules of Professional Responsibility states: "Violation of a Rule does not itself give rise to a cause of action against a lawyer nor does it create any presumption that a legal duty has been breached"); *see also Nirala v. Adhali*, No. PX-18-3330, 2019 WL 3457661, at *5 (D. Md. July 31, 2019) (quoting preamble); *McClain v. Wells Fargo Bank, N.A.*, No. TDC-17-1094, 2018 WL 1271231, at *8 (D. Md. Mar. 8, 2018) (quoting preamble), *aff'd*, 738 F. App'x 797 (4th Cir. 2018); *Sayyed v. Wolpoff & Abramson, LLP*, 733 F. Supp. 2d 635, 646 (D. Md. 2010) (quoting preamble).

Undeterred, A&L insists that, even if barratry and a violation of the professional rules of responsibility cannot be predicate torts for a civil conspiracy claim, their claim for intentional interference with contract is. This argument fails for two reasons. First, A&L did not plead this theory of civil conspiracy in the third-party complaint, and as with the tortious interference with contract claim, A&L cannot amend their pleading through an opposition brief. *See Bindagraphics, Inc.*, 377 F. Supp. 3d at 577. Second, even if A&L had alleged civil conspiracy to commit intentional interference with contract, they have not plausibly alleged a claim for intentional inference with contract for the reasons discussed above.

Plaintiffs' counsel's motion for judgment as to the civil conspiracy claim is granted. *See Marshall*, 758 F.3d at 541 (affirming dismissal of civil conspiracy claim because defendant could

not be held liable for underlying tort); *Arkansas Nursing Home*, 460 F. Supp. 3d at 648 (dismissing civil conspiracy claim because underlying tort claim was dismissed); *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 573 (D. Md. 2019) (same).

## IV.    Request for Leave to Amend

In their oppositions to plaintiffs' counsel's motions, A&L seeks leave to amend their third-party complaint.  ECF 70, at 10; ECF 71, at 1–2.  Pursuant to Rule 15, when the deadline for amending the pleadings has not passed, as is the case here, the Court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "A motion to amend should only be denied when 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'"  *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 217–18 (4th Cir. 2019) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Local Rule 103.6 provides that "[w]henever a party files a motion requesting leave to file an amended pleading, the original of the proposed amended pleading shall accompany the motion," and the party also shall file a redlined copy of the amended complaint and state whether the other side consents to the motion.  Loc. R. 103.6(a), (c), (d); *see also Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 628 (4th Cir. 2015) (district court did not abuse discretion in denying leave to amend when plaintiff "did not file a separate motion requesting leave to amend her complaint or attach a proposed amended complaint to her opposition brief," as Local Rule 103.6 required).

A&L has not filed a motion for leave to amend the third-party party complaint and has not complied with Local Rule 103.6.  Even so, their request to amend the third-party complaint is denied.  An amendment to allege intentional interference with contract as the tort underlying the civil conspiracy claim would be futile, because as discussed above, A&L has failed to state a claim

for intentional interference with contract.  Similarly, an amendment to add factual allegations about plaintiffs' counsel's 2019 letters to homeowners to substantiate A&L's allegations of barratry would be futile, because barratry is not a tort, and even if it were, sending the letters does not constitute barratry.

Finally, A&L seeks leave to amend "to allege the invalidity of [counsel's] retainers with the Named Plaintiffs based upon violation of the Barratry Act and violation of Rules 19-307.3 and 307.1 of the Maryland Attorneys' Rules of Professional Conduct. . . ."  ECF 71, at 1–2.  They query whether "if the retainer agreements are invalid, . . . this action [must] be dismissed on such grounds."  ECF 70, at 2.

This request to amend fails.  A&L does not explain how these allegations would support one of their existing causes of action or a new cause of action.  Notably, in the case on which A&L relies, the plaintiff who sought to invalidate a retainer agreement was the client.  *See Son v. Margolius, Mallios, Davis, Rider & Tomar*, 709 A.2d 112, 113 (Md. 1998).  It is unclear how A&L would be entitled to any relief—let alone dismissal of this action—based on allegedly invalid retainer agreements to which they were not a party.  Further, even if plaintiffs' counsel could not continue to represent plaintiffs because of invalid retainer agreements, plaintiffs could retain other counsel or represent themselves on non-class claims.  *See* Loc. R. 101.1(a).  Thus, because this amendment would not help A&L state a claim, amendment would be futile.

Therefore, A&L's request for leave to amend their third-party complaint is denied.

## V.    Third-Party Defendants' Motion for Sanctions

Plaintiffs' counsel filed a motion for Rule 11 sanctions against A&L for filing a frivolous third-party complaint intended to interfere with their attorney–client relationship.  ECF 67.  They ask the Court to award them reasonable attorneys' fees incurred in filing the motion for sanctions and the motion for judgment on the pleadings.

15

Rule 11 provides that when an attorney presents a written motion or other filing to the Court, the attorney

> certifies that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b).  If an attorney violates Rule 11(b), "the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

Rule 11 primarily serves "to 'deter future litigation abuse.'"  *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) (quoting *In re Kunstler,* 914 F.2d 505, 522 (4th Cir. 1990)); *see also In re Sargent*, 136 F.3d 349, 352 (4th Cir. 1998) (same).  It also enables the Court to provide "remediation of the harm caused by the Rule 11 violation, for example by compensating the victim for attorney's fees expended in responding to the frivolous claim; punishment of the person or entity responsible for the violation; and enhancement of judicial administration."  *In re Sargent*, 136 F.3d at 352–53 (citing *In re Kunstler*, 914 F.2d at 522).

The Court has the discretion to impose sanctions for Rule 11 violations.  *See Hunter*, 281 F.3d at 151.  However, "[s]anctions may be awarded only in the face of misconduct of some sort." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 146 (4th Cir. 2020).  "Rule 11 motions should not be made or threatened for minor, inconsequential violations" of the rule.  Fed. R. Civ. P. 11 advisory committee notes (1993).  Indeed, "[t]he Court expects that motions for sanctions will not be filed

as a matter of course" and "will consider in appropriate cases imposing sanctions upon parties who file unjustified sanctions motions." Loc. R. 105.8(a). Further, "when imposing sanctions under Rule 11, a court must limit the penalty to 'what is sufficient to deter repetition of such conduct,' and 'shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.'" *Hunter*, 281 F.3d at 151 (quoting Fed. R. Civ. P. 11(c)).

Rule 11 requires that attorneys "conduct[ ] a reasonable inquiry and . . . determine[ ] that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Chaudhry v. Gallerizzo*, 174 F.3d 394, 410 (4th Cir. 1999) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)); *see also Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 277 (4th Cir. 2006) (noting that allegations must be supported by the information counsel obtained before filing suit). Allegations cannot be "based on information which minimal factual inquiry would disprove." *Chaudhry*, 174 F.3d at 410–11 (quoting *In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990)). In other words, an attorney violates Rule 11 if "applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *Morris*, 448 F.3d at 277.

Here, A&L filed a third-party complaint against opposing counsel that easily failed to state a claim. There was no legal or factual basis for the intentional interference with contract or civil conspiracy claims. Any suggestion that plaintiffs' counsel improperly filed suit on behalf of the homeowners or otherwise acted for their own personal gain was baseless. At the time A&L filed the third-party complaint, they knew that the Maryland Court of Appeals had ruled resoundingly in favor of the homeowners by finding the Maryland Consumer Protection Act prohibited the HOAs' use of confessed judgment clauses in the promissory notes. *See Goshen Run Homeowners Ass'n v. Cisneros*, 223 A.3d 917, 941 (Md. 2020) (holding that "the plain language of CL § 13-

301(12) [of the Maryland Consumer Protection Act] prohibits the use of contracts containing all confessed judgment clauses in consumer transactions because the very essence of a confessed judgment clause requires that the debtor waive defenses"). Plaintiffs' counsel—far from acting for their own personal gain—were justified in challenging the illegal confessed judgment provisions in the promissory notes. *See Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010). Unsurprisingly, the *Goshen Run* ruling led the homeowners and HOAs to enter into settlement agreements that voided the notes. Although the voiding of the notes eliminated any benefit A&L might have received under them, A&L has identified no facts suggesting plaintiffs' counsel acted without lawful purpose or justification by negotiating settlement agreements that voided promissory notes containing illegal enforcement provisions.

In addition, no reasonable attorney would have believed he was justified in bringing a civil conspiracy claim where the alleged underlying tortious conduct was barratry—a crime, not a tort. And, even if A&L believed they could extend the law to include such a claim, a minimal factual inquiry conducted by a reasonable attorney would have shown that plaintiffs' counsel's alleged conduct did not amount to barratry.

Finally, A&L's insistence—in the face of obvious legal and factual deficiencies—that it has a viable claim against plaintiffs' counsel compels the conclusion that A&L filed the third-party complaint for an improper purpose. When plaintiffs' counsel identified the defects in A&L's complaint, A&L requested permission to amend to state a claim intended to invalidate the retainer agreements between counsel and their clients. Given this conduct and the plain defects in the third-party complaint, the Court can conclude only that A&L's purpose in filing the third-party complaint was to interfere with and unnecessarily delay this case and needlessly increase the cost of litigation.

Sanctions, therefore, are appropriate under Rule 11(c)(1) for filing a pleading in violation of Rule 11(b)(1)–(3).   Plaintiffs' counsel's motion for reasonable attorneys' fees incurred in connection with the Rule 12(c) motion and the motion for sanctions is granted.   These fees should deter A&L from bringing frivolous complaints in the future or needlessly prolonging or complicating existing litigation.

## VI.      Conclusion

Plaintiffs' counsel's motions for judgment on the pleadings as to the third-party complaint and sanctions against A&L for filing it, ECF 66 and 67, are granted.   Plaintiffs' counsel shall file a petition for attorneys' fees by March 16, 2022.

A separate order will issue.


Date: <u>March 1, 2022</u>

Deborah L. Boardman
United States District Judge

19